UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HOWARD COSBY, | : | |
|        Plaintiff, | : | |
| | : | |
|     v. | : | Case No. 3:15-cv-161 (DJS) |
| | : | |
| SCOTT ERFE, ET AL., | : | |
|        Defendants. | : | |

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [Docs. #27 & #46]

Plaintiff, Howard Cosby, commenced this action pursuant to 42 U.S.C. § 1983 against defendants Warden Scott Erfe and Deputy Warden Guiliana Mudano.  He alleges that the defendants violated his right to free exercise of the Buddhist religion by denying his request for a vegetarian diet. He alleges further that there were occasions when his food was tampered with, i.e., a bite was taken out of a sandwich, a sandwich was completely burned, and a piece of wax paper was present in a sandwich.  The parties have filed cross-motions for summary judgment. For the reasons that follow, the defendants' motion is granted and the plaintiff's motion is denied.

I.     Standard of Review

A motion for summary judgment may be granted only where "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the

1

moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  The nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful."  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

II.    Facts[1]

The Connecticut Department of Correction ("DOC") does not offer individualized menus for inmates.  Instead, it offers two menu options, the Master menu and the Common Fare menu. Both menus were designed by registered dietitians and comply with all recommended dietary requirements.  The Common Fare menu was designed to reasonably accommodate recognized religious dietary requirements by substituting fish, cheese or another meatless protein for meat items. All inmates receive the Master menu unless they register to receive the Common Fare menu.

The DOC provides nearly 50, 000 meals each day to nearly 16,000 inmates.  Offering individualized menus based on inmate preferences would be cost prohibitive and greatly increase administrative burdens and opportunities for confusion.  Increasing the number of food items offered each day would result in increased costs because the DOC would no longer be able to purchase items in the quantities required to achieve cost savings and result in increased waste

---

[1] The facts are taken from the defendants' Local Rule 56(a) Statements and supporting exhibits.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  D. Conn. L. Civ. R. 56(a)2 and 56(a)3.  Although the plaintiff has submitted a Local Rule 56(a)2 Statement, many of his denials lack the required citation to record evidence.  The Court does not credit denials lacking the required citations.

from unused food items.  Every menu offered must be evaluated by a registered dietitian to determine the nutritional adequacy of the meal.

During the time relevant to this action, defendant Erfe was the warden at the Corrigan-Radgowski Correctional Center ("Corrigan").  He now is the warden at Cheshire Correctional Institution.  As warden, defendant Erfe is responsible for generally overseeing the correctional facility including supervising staff.  He also responds to inmate grievances by reviewing and deciding whether to approve the response prepared by the grievance coordinator.  As warden, he is not personally involved in planning inmate menus or altering them to conform to religious or medical needs.

In January 2013, the plaintiff submitted an "Inmate Request Form," in which he stated that "in Buddhism, we do not believe in killing any living thing [and] do not eat any living thing that has been killed . . . includ[ing] fish. So the common fare diet is not sufficient for me because it contains fish. Again I am requesting a strictly vegetarian diet." (Doc. # 60-3, at 29).  The Corrigan kitchen supervisor responded to his request as follows: "The DOC offers inmates a choice between a Master Menu and a Common Fare menu. The Common Fare menu is a meatless menu that meets all the nutritional requirements as determined by a DOC licensed dietician, without the presence of food items forbidden by religious dogma (A.D. 10.8, paragraph 30)[2]. You may select between either menu." (*Id*.).

In May 2013, the plaintiff filed a grievance regarding his diet. On June 3, 2013, defendant Erfe received the plaintiff's grievance and a recommendation from the grievance coordinator that the grievance be denied because the plaintiff was already receiving the Common

---

[2] "A.D. 10.8" refers to "DOC Administrative Directive 10.8 . . . ." (Doc. # 46-7, at 3, ¶ 7).

Fare menu. On June 6, 2013, defendant Erfe denied the grievance because the plaintiff was already receiving the menu that was designed to accommodate religious practices and did not contain meat and there was nothing more that he could do.  As warden, defendant Erfe was not authorized to make substitutions to an inmate's menu.  His understanding is that such changes may be made only by a dietitian or nutrition expert in Food Services or by the medical unit.  At the time he denied the grievance, defendant Erfe was aware of only one instance where the Department of Correction had developed an individual menu for an inmate based upon religious preferences and that instance occurred as the result of a settlement agreement between another inmate and the Attorney General's Office.

In September 2013, defendant Erfe received a letter from the PETA[3] Foundation stating that the plaintiff was not receiving vegetarian meals.  Defendant Deputy Warden Mudano, the deputy warden of operations at Corrigan during the relevant time period, was responsible for overseeing the kitchen.  Therefore, defendant Erfe forwarded the letter to her. Erfe did not receive any further communications or complaints from the plaintiff about his diet at Corrigan.

At a meeting of the Corrigan religious review committee on September 11, 2013, shortly after the PETA letter was received, the committee members, including defendant Mudano, discussed the plaintiff's menu and whether DOC Food Services could substitute another food item for fish.  It was determined that Food Services could replace fish with a nutritionally adequate substitute whenever fish appeared in the Common Fare menu

The day after the committee meeting, defendant Mudano met with the plaintiff and told him that the fish would be replaced with a nutritionally adequate substitute, most likely a grilled cheese sandwich, a peanut butter and jelly sandwich or an egg option.  The plaintiff expressed

---

[3] PETA is an acronym for the organization People for the Ethical Treatment of Animals.

his thanks and appreciation.  The plaintiff did not tell defendant Mudano that he could not eat

eggs.  Defendant Mudano informed the kitchen staff that the plaintiff was satisfied with the

indicated changes.  The revised menu was then implemented.  Defendant Mudano did not

communicate with the plaintiff about his menu after September 12, 2013.

Defendants Erfe and Mudano did not work in the kitchen.  Defendant Mudano was

responsible for kitchen oversight.  This, like many of her oversight duties, was delegated to a

subordinate.  For example, kitchen oversight would be delegated to the kitchen supervisors.  If an

inmate had a problem with his meals, he would follow the chain of command and notify a

correctional officer or member of the kitchen staff.  Defendant Mudano had no involvement with

planning inmate menus or altering menus to conform to religious or medical requirements.

After defendant Mudano addressed the plaintiff's dietary concerns, defendant Erfe

received no written communications or complaints from the plaintiff about his meals.  Neither

defendant tampered with the plaintiff's food.  The plaintiff testified at his deposition that he did

not inform defendant Mudano that he was receiving incorrect meals after September 12, 2013.

Nor did he inform either defendant about any tampering with his food.

In March 2015, staff at Cheshire Correctional Institution told Mr. DeVeau, a registered

dietitian, that the plaintiff was complaining about his menu and asked that he consult with the

plaintiff regarding his diet.  Although Food Service had consulted with Mr. DeVeau when

developing the plaintiff's menu in 2013, Mr. DeVeau did not know that the plaintiff was the

subject of the prior consultation.  Mr. DeVeau met with the plaintiff on March 17, 2015.  The

plaintiff explained that the menu was inconsistent with his religious dietary requirements.  Mr.

DeVeau responded that the Common Fare menu was designed to accommodate inmate religious

practices.  The plaintiff requested a substitution for the fish on the Common Fare menu.  Mr.

DeVeau stated that he had no authority to make a substitution, but would contact the Director of Food Service, Mr. Bibens.  When Mr. Bibens learned that the plaintiff was complaining about his meals, he provided the kitchen staff at Cheshire Correctional Institution a copy of the diet developed for the plaintiff so he could receive meals that complied with his religious dietary requirements.

Subsequently, Food Service repeated the process to determine what food items could be substituted for eggs and obtaining approval from a registered dietitian.  A revised menu plan was implemented.  With a few minor mishaps, since March 2015 the plaintiff has received vegetarian meals at Cheshire Correctional Institution.

The plaintiff can practice his religion individually in several ways while incarcerated.  He engages in personal prayer and meditation, and participates weekly in a meditation group.  He receives and reads numerous Buddhist books and publications and takes a correspondence course with the Buddhist Association of the United States.  He also may purchase Mala beads, an item commonly requested by Buddhist inmates.

III.    Discussion

In his amended complaint, the plaintiff represents that "at all times relevant to this complaint, [he was] a sentenced prisoner in the custody of the Department of Correction (DOC) housed at Corrigan Correctional Institution (Corrigan), Uncasville, Connecticut." (Doc. # 49, at 2, ¶ 3). He alleges in the amended complaint that the defendants violated his First and Eighth Amendment rights by failing to provide him meals that included neither meat nor fish in accordance with his religious practices and by denying him nutritionally adequate meals, since, on a few occasions when he was provided meals without meat or fish, the food was tampered with by unknown persons. The plaintiff has named the defendants, the then-warden and deputy

warden at Corrigan, in their individual and official capacities.  He seeks compensatory and punitive damages and a permanent injunction ordering the defendants to adopt a common fare diet that conforms to his Buddhist religion and to amend the regular Common Fare diet policy to satisfy religious dietary needs and requirements.

In his memorandum, the plaintiff attempts to expand his claims to include his confinement at Northern Correctional Institution, MacDougall-Walker Correctional Center, and Cheshire Correctional Institution and argues that he requires a diet without eggs, as well as without fish and meat.  He also attempts to assert a new claim that the defendants failed to ensure that he would receive a proper vegetarian diet upon his transfer to a different correctional facility.  The plaintiff cannot amend his complaint in a memorandum.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (district court cannot consider new claims asserted by pro se plaintiff in opposition to motion to dismiss); *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (holding that district court did not err in disregarding allegations raised for the first time in response to motion for summary judgment).  Thus, these new claims are not part of this case and will not be considered.  The Court considers only the claims relating to the time the plaintiff was "a sentenced prisoner in the custody of the Department of Correction (DOC) housed at Corrigan," as stated in his amended complaint. (Doc. # 49, at 2, ¶ 3).

The plaintiff moves for summary judgment on the merits of his First and Eighth Amendment claims.  The defendants have filed a cross-motion for summary judgment on the grounds that the plaintiff fails to state cognizable claims under the First and Eighth Amendments, that the plaintiff has not alleged facts demonstrating personal involvement of the defendants to warrant an award of damages, and that his claims for injunctive relief are moot.

A.    <u>Personal Involvement</u>

This argument has two components.  First, the defendants argue that they were not personally involved in the constitutional violations.  Second, they contend that they lacked authority to grant the requested relief.

The defendants in this case, the warden and deputy warden, are supervisory officials.  To obtain an award of damages, the plaintiff must demonstrate that each defendant was personally involved in the alleged constitutional deprivation.  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).  The Second Circuit has held that personal involvement of supervisory defendants can be established by showing: (1) the defendant actually and directly participated in the alleged actions; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or permitted such a policy or custom to continue; (4) the defendant was grossly negligent in his supervision of the officers who committed the constitutional violation; or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).[4]  The plaintiff also must demonstrate a causal link between the actions of the supervisory official and his injuries.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In May 2013, the plaintiff submitted a grievance concerning his diet. In the grievance the

---

[4] In *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), the Supreme Court reaffirmed that supervisory liability under §1983 cannot be based on a theory of *respondeat superior* and went on to state that "each Government official . . . is only liable for his or her own misconduct." In light of the Supreme Court's pronouncement in *Iqbal*, the current viability of the supervisory liability test articulated in *Hernandez* is unsettled: "We have not yet determined the contours of the supervisory liability test . . . after *Iqbal*." *Rasparado v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014).

plaintiff stated that he is a Buddhist and that members of his religion do not eat meat, but went

on to request "a strict vegetarian meal diet without fish." (Doc. # 46-7, at 8). On June 3, 2013,

defendant Erfe received the plaintiff's grievance and a recommendation from the grievance

coordinator that the grievance be denied because the plaintiff was already receiving the Common

Fare menu. On June 6, 2013, defendant Erfe denied the grievance because "the plaintiff was

already on the menu that accommodated religious practices and did not contain meat, and there

was nothing more that [he] could do." (Doc. # 46-7, at 3, ¶ 8). The Court will assume for the

sake of argument that defendant Erfe was personally involved in this matter on the basis of

failing to remedy a wrong after being informed of the wrong through the grievance. *See*

*Anderson v. Ford*, No. 3:06CV1968(HBF), 2007 WL 3025292, at *7 (D. Conn. Oct. 16, 2007)

(internal quotation marks omitted) ("Personal involvement will be found … where a supervisory

official received and acts on a prisoner's grievance or otherwise reviews and responds to a

prisoner's complaint").

     Defendant Erfe stated in his affidavit that he agreed with the recommendation that the

grievance be denied because the Department of Correction offered only two dietary options and

the plaintiff already was registered to receive the Common Fare menu.  Department of

Correction Administrative Directive 10.8, Section 3(D), defines Common Fare as "[a] diet which

meets all nutritional requirements as determined by a Department of Correction licensed

dietician, without the presence of food items forbidden by religious dogma."

www.ct.gov/doc/LIB/doc/PDF/AD/ad1008.pdf (last visited May 18, 2016).  The Common Fare

menu does not include meat.  The grievance is ambiguous in that the plaintiff stated that his

religion precludes eating meat, but then went on to request a vegetarian diet without meat or fish.

     Defendant Erfe could reasonably have concluded that the plaintiff's religion only

precluded eating meat, which is not included on the Common Fare menu, and that his request for no fish was a personal preference.  Warden Erfe's decision is supported by the evidence provided by the plaintiff in opposition to the defendant's motion for summary judgment.  He has submitted documentation which indicates that "[m]ost Buddhists follow a vegetarian diet even though this is not a precept of the faith." (Doc. # 60-4, at 18). Thus, defendant Erfe's response to the ambiguous request was reasonable.

To support a claim for supervisory liability, the plaintiff must demonstrate a causal connection between his injuries and defendant Erfe's actions.  This he cannot do.  Even if the grievance was not ambiguous, defendant Erfe "was not authorized to make any substitutions to an inmate's menu." (Doc. # 46-7, at 3, ¶ 9). Only Food Services or the medical unit has the authority to change the menus.  *See* Department of Correction Administrative Directive 10.18, Section 6(D) (any menu adjustment must be approved by the District Food Service Manager or the Correctional Chief of Food Services) and Section 9 (therapeutic diets must be approved by the facility physician  and the Correctional Chief of Food Services), www.ct.gov/doc/LIB/doc/PDF/AD/ad1018.pdf (last visited May 18, 2016).   The plaintiff has provided no contrary evidence.  Thus, the plaintiff fails to demonstrate the required causal connection between the actions of defendant Erfe and his injuries.  Another district court within the Second Circuit has reached a similar result.  In *Williams v. Fisher*, No. 9:11-CV-379(NAM/TWD), 2015 WL 1137644 (N.D.N.Y. Mar. 11, 2015), the plaintiff brought First and Eighth Amendment claims on the ground that the defendants failed to acknowledge his faith as a Nazarite Jew and failed to provide him a nutritious alternative diet that comported with his religious dietary laws.  The court dismissed the claims against the Superintendent and Deputy Superintendent of the facility in part because they lacked authority to create or change prison

menu without prior approval of Office of Nutritional Services.  *Id.*, 2015 WL 1137644, at \*21.

The plaintiff also argues that defendant Erfe should have investigated his request and contacted other persons who could have modified his diet.  The plaintiff, however, has no constitutionally protected right to any particular response to his grievance.  *See Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012) (prisoner has no constitutional right to prison grievance procedure or to have his grievance investigated).

In early September 2013, the PETA Foundation sent the warden a letter regarding the plaintiff's diet.  Defendant Erfe referred the letter to Deputy Warden Mudano, as she was responsible for overseeing the prison kitchens.   Referring a letter to a subordinate for action is insufficient to establish personal involvement.  *See Rodriguez v. Rock*. No. 9:13-CV-01106 (DNH/DEP), 2015 WL 5147045, at \*6 (N.D.N.Y. Sept. 1, 2015) (where supervisor's only involvement is referral of correspondence to appropriate staff, supervisor has insufficient personal involvement to support a section 1983 claim) (citing cases).   The plaintiff does not provide evidence showing that he had any further contact with defendant Erfe regarding his meals.

The plaintiff alleges that, on September 12, 2013, Deputy Warden Mudano met with him and told him that fish would be removed from his trays.  The Religious Review Committee and Food Services had agreed to the menu change.   Although the plaintiff alleges that this menu change did not occur, he acknowledged at his deposition that he never told defendant Mudano that his trays continued to include fish. (Doc. # 46-11, at 13:1-5).  The plaintiff also stated in his deposition that defendant Mudano was not involved prior to September 2013 and that he was only looking to "hold[] her accountable for that particular day [September 12, 2013] when I spoke to her up to this point." (*Id.* at 11:21-24, 12:2-4).  Defendant Mudano was informed that

the plaintiff required trays that did not include fish or meat and took action to achieve that end. Absent knowledge that the plaintiff's trays continued to include fish or that persons unknown had tampered with his meals, defendant Mudano was not personally involved with the plaintiff receiving any improper trays.

The defendants' motion for summary judgment is granted as to the claims for damages against defendants Erfe and Mudano.

      B.    <u>Injunctive Relief</u>

The plaintiff seeks injunctive relief in the form of an order that the defendants adopt a common fare diet that complies with Buddhist dietary requirements.  The plaintiff is now confined at Cheshire Correctional Institution ("Cheshire").  The defendants have provided evidence that upon learning that the plaintiff sought a Common Fare diet that did not include fish or eggs, the Director of Food Service provided the kitchen staff at Cheshire a copy of the diet developed for the plaintiff so he could receive meals that complied with his religious dietary requirements.  The plaintiff has provided no evidence that he currently is not receiving that diet. At his deposition on September 9, 2015, the plaintiff testified that he started getting his requested vegetarian menu at Cheshire in March 2015, and that since that time, he has, with a few exceptions, been receiving the vegetarian menu. (Doc. # 46-11, at 18:15-25, 19:1-3).  In light of the accommodation made for the plaintiff, the Court concludes that his request for injunctive relief is moot.

The plaintiff also seeks to amend the regular Common Fare diet policy to satisfy religious dietary needs and requirements. The Court has already addressed the accommodations made by the DOC for the plaintiff. To the extent that the plaintiff is seeking accommodations for other inmates, he lacks standing to assert such a claim.  *See Iannoccone v. Law*, 142 F.3d 553, 558 (2d

Cir. 1998) (person appearing *pro se* can only assert claims personal to himself).  Accordingly,

the defendants' motion for summary judgment is granted as to the claims for injunctive relief.

IV.     Conclusion

        For the reasons stated above, the defendants' motion for summary judgment [**Doc. #46**] is

**GRANTED** and the plaintiff's motion for summary judgment [**Doc. #27**] is **DENIED**.  The

Clerk is directed to enter judgment for the defendants and close this case.

        SO ORDERED this    19th    day of May, 2016.

        _____/s/ DJS_____
                                Dominic J. Squatrito
                                United States District Judge